UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NADIA HOJJATOLESLAMI,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MARCO RUBIO, Secretary of State, et al.,**<br><br>**Defendants.**[1] | Civil Action No.  24-2871 (JDB) |

**MEMORANDUM OPINION**

In May 2024, Nadia Hojjatoleslami and her husband interviewed for nonimmigrant visas at the U.S. consulate in Frankfurt, Germany.  Her husband's visa application was approved that day.  Hojjatoleslami's was not.  Instead, the consulate told Hojjatoleslami that it had refused her application, and it requested additional biographical information—which she promptly provided.  Yet Hojjatoleslami's application remains today in a kind of purgatory the Department of State calls "administrative processing."

Hojjatoleslami, believing her application has been in administrative processing for an unreasonably long period, asks this Court to compel certain U.S. government officials to act, namely by reevaluating her visa application in light of the supplemental information that she has provided.  Defendants[2] seek dismissal on several grounds.  The Court agrees with two: some of

---

[1] See Fed. R. Civ. P. 25(d).

[2] Hojjatoleslami sues the following individuals in their official capacities: Marco Rubio, Secretary of State; Pamela Bondi, Attorney General; Alan Meltzer, Chargé d'Affaires ad interim of the U.S. Embassy to Germany; Brian Heath, Consul General at the U.S. Consulate in Frankfurt, Germany; and Jeanine Pirro, interim U.S. Attorney for the District of Columbia.  See Compl. for Writ. of Mandamus Compelling Administrative Processing of EB-2 Visa [ECF No. 1] ¶¶ 6–10; Fed. R. Civ. P. 25(d).

1

the defendants are improper, and Hojjatoleslami fails to state a claim for an unreasonable delay at this time. Accordingly, the Court grants the motion to dismiss without prejudice.

## Legal Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., authorizes the issuance of different types of visas to certain categories of foreign nationals. The State Department issues E-2 nonimmigrant visas to certain foreign nationals who seek to operate commercial enterprises in which they have already invested "a substantial amount of capital." See 9 Foreign Affs. Manual ("FAM") § 402.9-2(a). Spouses of those investors may be eligible for the same nonimmigrant visas as "derivatives." Id. § 402.9-9(a). Recipients of E-2 investor visas are allowed to stay in the United States for an initial term of up to two years, though they may request multiple extensions of up to two years each. E-2 Treaty Investors, U.S. CITIZENSHIP & IMMIGRATION SERVICES, (Apr. 8, 2025), https://www.uscis.gov/working-in-the-united-states/temporary-workers/e-2-treaty-investors.

An applicant for a U.S. visa bears the burden of demonstrating she is eligible for the visa. 8 U.S.C. § 1361. To secure a nonimmigrant visa such as the E-2, an applicant generally must, among other steps, interview with a consular officer. See 22 C.F.R. § 41.102; 9 FAM § 403.5-2(C)(1). After the interview, the consular officer "must issue the visa" if the applicant has "properly completed" her visa application or "refuse the visa" if the applicant has not established her eligibility.[3] 22 C.F.R. § 41.121(a); see also 8 U.S.C. §§ 1201(a)(1)(B).

Even if a consular officer concludes an applicant has not demonstrated eligibility for the requested visa and refuses that visa, the application may not be doomed forever. The officer may, if he perceives that the applicant might be able to demonstrate eligibility for the visa under changed

---

[3] In some circumstances not applicable here, the consular officer might also discontinue granting a visa. See 22 C.F.R. §§ 41.121(a), 41.123.

2

circumstances or with additional information, choose to place the refused application in a status known as "administrative processing." See Administrative Processing Information, U.S. DEP'T OF STATE – BUREAU OF CONSULAR AFFS., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited July 29, 2025)[4]; 9 FAM § 403.10-4. A visa application in administrative processing remains refused, but "[a] consular officer will request additional information when she or he believes the information is relevant to establishing that an applicant is eligible for the visa sought." See Administrative Processing Information.

## Factual Background

Nadia Hojjatoleslami is an Iranian citizen and a permanent resident of Germany. Compl. for Writ. of Mandamus Compelling Administrative Processing of EB-2 Visa [ECF No. 1] ("Compl.") ¶ 5. Before seeking the E-2 visa at issue here, Hojjatoleslami and her husband, Reza Zahedi, applied for a different kind of nonimmigrant visa, the B1/B2 visitor visa. Id. ¶ 1. Zahedi, a Dutch national, see Compl. Ex. C [ECF No. 1-3], received that visa, Compl. ¶ 1. But Hojjatoleslami's application was refused and placed in administrative processing, where it has remained since March 2023. Id. ¶¶ 1, 20.

In February 2024, Zahedi applied for the E-2 investor visa on behalf of himself and Hojjatoleslami so he could establish in the United States an asset-management and investment company focused on real estate. Id. ¶ 22. The couple planned for Hojjatoleslami, who has a bachelor's degree in civil engineering, to help with the business. Id. But in May 2024, Hojjatoleslami's application was again refused and placed in administrative processing, while Zahedi's was again approved. Id. ¶¶ 23–24. The consulate asked Hojjatoleslami for additional

---

[4] Courts may take judicial notice of information on government websites. Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Hum. Servs., 43 F. Supp. 3d 28, 33 (D.D.C. 2014).

3

biographical information, which she provided the next day.  Id. ¶ 24.  Hojjatoleslami is still waiting to hear whether her supplemental information has changed the outcome of her application.  Id. ¶ 27.  She remains in Germany, while Zahedi resides in the United States.  Id. ¶ 31.

After waiting more than four months for a response to her supplemental information, id. ¶ 27, Hojjatoleslami filed this lawsuit in October 2024 against State Department and Justice Department officials, id. at 13.  She contends the defendants have unreasonably delayed acting on her E-2 application and asks this Court to compel action under the Administrative Procedure Act ("APA"), 5 U.S.C., § 706(1), or the Mandamus Act, 28 U.S.C. § 1361.  See Compl. ¶¶ 36–48.[5]  The defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See Mot. Dismiss & Mem. Supp. Thereof [ECF No. 6] ("Mot.") at 1.  Hojjatoleslami filed an opposition, Mem. L. Opp'n Mot. [ECF No. 8] ("Opp'n"), and the defendants filed a reply, Reply Further Supp. Mot. [ECF No. 11] ("Reply").  The motion is now fully briefed and ripe for decision.

**Legal Standards**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  E.g., Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted).  But a court "do[es] not assume the truth of legal conclusions or accept inferences that are unsupported by the

---

[5] Although Hojjatoleslami underscores in her complaint that her B1/B2 visa application has languished in administrative processing for what was then one-and-a-half years, see Compl. ¶¶ 20, 27, her claims pertain only to her E-2 visa application, see id. ¶¶ 36–48; Mem. L. Opp'n Mot. [ECF 8] at 9 n.4.

4

facts set out in the complaint." Air Excursions LLC v. Yellen, 66 F.4th 272, 277 (D.C. Cir. 2023) (cleaned up). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court ruling on a Rule 12(b)(6) motion may consider not only the complaint's allegations but also the complaint's exhibits and other matters of which the court may take judicial notice. See Gun Owners of Am., Inc. v. FBI, 594 F. Supp. 3d 37, 42 (D.D.C. 2022). Courts apply this same "standard when assessing a facial (rather than factual) challenge to a complaint's jurisdictional allegations under Rule 12(b)(1)." Tahavori v. Blinken, Civ. A. No. 23-1460 (JDB), 2024 WL 1328546, at *2 (D.D.C. Mar. 28, 2024) (citing Simon v. Republic of Hungary, 77 F.4th 1077, 1116 (D.C. Cir. 2023)).

**Analysis**

The defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on three grounds. Under Rule 12(b)(1), the defendants argue that Hojjatoleslami has improperly named among the defendants two officials who cannot provide the requested relief, Mot. at 4–5, and that the consular nonreviewability doctrine precludes judicial review of Hojjatoleslami's claims, see id. at 9–12. Under Rule 12(b)(6), the defendants argue Hojjatoleslami has failed to state a claim because the defendants had no clear, nondiscretionary duty to act further on her visa application. But the Court ultimately grants the motion to dismiss on a fourth basis: Hojjatoleslami has not stated a plausible claim that the defendants unreasonably delayed action.

**I. The Justice Department officials are improper defendants.**

The defendants argue the Court lacks subject-matter jurisdiction over the claims against two Justice Department officials: the United States Attorney General and the United States Attorney for the District of Columbia. According to the defendants, Hojjatoleslami has failed to allege that these two officials play any role in adjudicating her visa application. Mot. at 4. If so,

5

that's a problem for Article III standing, which requires that a plaintiff have an injury in fact that is caused by each defendant and redressable by the requested relief. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Establishing jurisdiction here is Hojjatoleslami's burden. See id. at 561.

The Court agrees that Hojjatoleslami has failed to allege causation or redressability with respect to the two Justice Department officials. Hojjatoleslami's complaint gives cursory treatment to these defendants, contending simply they are generally responsible for enforcing immigration laws. See Compl. ¶¶ 7, 10. But the Court is unaware of—and Hojjatoleslami has not proffered—any mechanism through which either the Attorney General or U.S. Attorney has played a role in adjudicating her visa application or could speed up the process. See, e.g., Nelson's Cabinetry, Inc. v. Blinken, Civ. A. No. 24-1335 (PLF), 2025 WL 83027, at *5–6 (D.D.C. Jan. 13, 2025) (collecting cases where judges in this District have dismissed the Attorney General as an improper defendant in visa litigation). Any injury Hojjatoleslami has suffered from State Department officials' failure to act on her visa application is not fairly traceable to Justice Department officials simply because the latter enforce laws in the same general area of immigration. See Kahbasi v. Blinken, Civ. A. No. 23-1667 (LLA), 2024 WL 3202222, at *4 (D.D.C. June 27, 2024)

Besides, according to a footnote in her opposition filing, Hojjatoleslami does not oppose the dismissal of the Justice Department officials. See Opp'n at 6 n.3. No one, then, seems to be clamoring for these officials to remain as defendants. Accordingly, the Court will dismiss them.

**II. The consular nonreviewability doctrine does not bar judicial review.**

Left with just the State Department defendants, see supra note 2, the Court assesses the defendants' next asserted ground for dismissal: the consular nonreviewability doctrine. "Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial

6

review, at least unless Congress says otherwise." Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021). The doctrine allows courts to avoid treading on the other branches' turf, "[i]n view of the political nature of visa determinations." See Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999). The defendants attempt to frame this case as a challenge to the substance of visa adjudications and thus beyond the reach of courts. See Mot. at 9–12. But the plaintiff's claim is about the timing of her visa application—a territory to which consular nonreviewability does not extend. See Diabin v. Rubio, Civ. A. No. 24-3374 (JDB), 2025 WL 1824841, at *3 (D.D.C. July 2, 2025) (collecting cases). And hence, consular nonreviewability is not a bar to judicial review. See, e.g., Azeez v. Murphy, Civ. A. No. 23-1947 (CRC), 2024 WL 3924565, at *3 (D.D.C. Aug. 23, 2024).[6]

### III. The defendants have not unreasonably delayed acting on Hojjatoleslami's visa application.

Next, the Court turns to whether Hojjatoleslami has failed to state a claim for unreasonable delay. Under the APA, an administrative agency must "pass upon a matter presented to it within a reasonable time." Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022) (cleaned up) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003)); 5 U.S.C. § 555(b). To state a claim for unreasonable delay, a plaintiff must allege, first, "that the agency failed to take a discrete agency action that it is required to take and, second, that the delay was unreasonable." Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (cleaned up). In other words, the Court can

---

[6] The D.C. Circuit's unpublished opinion in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), does not persuade the Court otherwise. "[T]he Circuit in Karimova explicitly said it was not deciding whether nonreviewability applied in cases about the timing—rather than the substance—of visa decisions." Diabin, 2025 WL 1824841, at *3 (emphasis omitted); see Karimova, 2024 WL 3517852, at *6. The Court also finds the out-of-circuit precedent the defendants cite, Mot. at 11, unpersuasive in light of the "near consensus" among judges in this District that consular nonreviewability poses no impediment to judicial review of the timing of visa decisions, Diabin, 2025 WL 1824841, at *3.

7

compel the defendants to take further action on Hojjatoleslami's application only if (i) the defendants are under a clear, nondiscretionary duty to do so and (ii) they have unreasonably delayed discharging that duty. See, e.g., Mahmoodi v. Altman-Winans, Civ. A. No. 24-2010 (BAH), 2025 WL 763754, at *3 (D.D.C. Mar. 11, 2025) (noting that standard applies under both the APA and the Mandamus Act).

The defendants contend Hojjatoleslami has failed to allege a clear, nondiscretionary duty to process her application further. Mot. at 5. They argue the D.C. Circuit's unpublished opinion in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), established the government has no duty to act on a visa application once the officer has already refused the visa and placed it in administrative processing. Mot. at 6. Hojjatoleslami, meanwhile, contends that such a duty exists and that Karimova is neither binding[7] nor applicable nor correct. Opp'n at 6–11.

This Court need not address the effects of Karimova here. Because even if the Court assumes that a clear, nondiscretionary duty exists, Hojjatoleslami must also sufficiently allege the agency's delay was unreasonable under the factors laid out in Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984).[8] She has not done so.

---

[7] Judges in this District have not reached consensus about whether Karimova, as an unpublished Circuit opinion, binds them. Diabin, 2025 WL 1824841, at *3 n.3 (collecting cases that diverge on the effects of Karimova).

[8] In assuming a nondiscretionary duty so as to reach the TRAC factors, the Court aligns with its previous practice and that of other judges in this District. See, e.g., Ba Tis v. U.S. Dep't of State, Civ. A. No. 24-219 (JDB), 2025 WL 1906575, at *10 n. 8 (D.D.C. Mar. 27, 2025) (collecting cases). The Court reaches the TRAC factors despite the paucity of briefing on them. In a footnote, the defendants aver (without support) that "[a]pplying TRAC here would . . . lead to the dismissal of this suit" and announce they would further brief the TRAC factors after the Court adjudicates their motion to dismiss on consular reviewability and nondiscretionary duty grounds. See Mot. at 1 n.1. "But the Court is not bound to consider this case 'piecemeal' just because the defendants wish it to." Diabin, 2025 WL 1824841, at *4. The case law in this jurisdiction makes clear that Hojjatoleslami's complaint fails under TRAC. So even though Hojjatoleslami did not fully brief the TRAC factors either, see Opp'n at 5 n.2, the Court may dismiss her complaint now for failure to state a claim because it is "patently obvious that [Hojjatoleslami] cannot possibly prevail based on the facts alleged in the complaint." See Mahmoodi, 2025 WL 763754, at *8 (cleaned up) (quoting Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 127 (D.C. Cir. 2012)).

The TRAC factors, which courts use to determine whether an agency delay is unreasonable, are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up).

"These factors are not 'ironclad' but offer 'useful guidance.'" Dastagir v. Blinken, 557 F. Supp. 3d 160, 164 (D.D.C. 2021) (quoting TRAC, 750 F.2d at 80). The first factor, regarding the rule of reason, and the fourth factor, regarding the effects of speeding up the action on other agency priorities, generally carry the most weight. Makttoof v. Rubio, Civ. A. No. 24-1344 (JDB), 2025 WL 928706, at *5 (D.D.C. Mar. 27, 2025).

### A. TRAC Factors One and Two

Courts often consider the first two factors—whether the agency's timing follows a rule of reason and whether Congress has set a deadline for the action—in tandem. Mahmoodi, 2025 WL 763754, at *8. Congress expressed in an "aspirational statement" in 2000 that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." See Da Costa, 80 F.4th at 344 (internal quotation marks omitted). But that language does not establish a deadline. See id.; accord de Belinay v. Mayorkas, Civ. A. No. 24-240 (CRC), 2025 WL 671120, at *6 (D.D.C. Mar. 3, 2025) (observing that Congress has provided no deadline for resolving E-2 visa applications in administrative processing).

9

Absent a congressionally imposed deadline, courts look to case law to assess whether a rule of reason undergirds an agency's delay. Dastagir, 557 F. Supp. 3d at 165. "No bright lines have been drawn in this context, but district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Arab v. Blinken, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (cleaned up); accord Mahmoodi, 2025 WL 763754, at *9 (collecting cases indicating two-to-three-year delays are not unreasonable). Here, the delay—the time Hojjatoleslami's E-2 visa application has languished in administrative processing—is fourteen months.[9] Such a delay is undoubtedly frustrating. But it falls well within the range that courts in this District have deemed not unreasonable. Therefore, the first two TRAC factors weigh against Hojjatoleslami.

B. **TRAC** Factor Four

The fourth factor—whether granting relief would involve fast-tracking one application ahead of applications of higher or competing priority—also disfavors Hojjatoleslami. Granting Hojjatoleslami relief would create a line-jumping problem: by speeding up the review of her application, the State Department would shift other applications back one space in line "and

---

[9] Neither party explicitly addresses how a court ought to calculate the length of the allegedly unreasonable delay—in particular, whether the end date of the delay should be the date the lawsuit was filed or the date a court issues its opinion. But the defendants seem to emphasize the date Hojjatoleslami filed the lawsuit (although their proposed start date seemingly is the date of denial of the B-1/B-2 visa application). See Mot. at 2 ("[T]he period between the refusal of the Visa Application and the date Plaintiff filed this suit was approximately twenty months."). Hojjatoleslami, in contrast, implies the clock keeps ticking after the lawsuit's filing (although her calculation seems to imply, incorrectly, that her application was placed in administrative processing when she filed it in February 2024, rather than when the consulate refused the visa in May 2024). See Opp'n at 4 ("Plaintiff's E-2 Application has been in administrative processing for 11 months." (emphasis added)). She seemingly would define the end date of the delay as the date of this opinion's issuance.

The Court agrees with Hojjatoleslami's proposed end date. It is the more sensible option, recognizing that a plaintiff's filing of a lawsuit doesn't freeze defendants' delay in amber. This approach is also consistent with the ample unreasonable-delay case law in this Circuit, which often "focus[es] on the delay from the last Government action to the issuance of the opinion." Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022) (cleaned up). Thus, the Court calculates the time between the date the consulate placed the E-2 visa application in administrative processing—May 23, 2024, Compl. ¶ 24—to the date of this opinion.

ultimately delay[] the final adjudication of the applications that were skipped." Meyou, 2022 WL 1556344, at *4 (collecting cases); see In re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991). "While the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." Tate v. Pompeo, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). So this factor weighs against Hojjatoleslami.

### C. TRAC Factors Three and Five

The third and fifth factors somewhat tip toward Hojjatoleslami. These factors concern the delay's effects on the plaintiff's health, welfare, and other interests. The third factor makes the common-sense observation that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake," while the fifth factor reminds courts to consider, more broadly, "the nature and extent of the interests" swept up in the delay. TRAC, 750 F.2d at 80; see Da Costa, 80 F.4th at 344–45. Hojjatoleslami alleges that the defendants' delay in processing her visa application has caused her and Zahedi significant hardship by preventing her from joining her husband in the United States. Compl. ¶ 31. The Court agrees that prolonged separation of spouses "may place health and welfare at stake."[10] Accordingly, these factors "slightly" favor Hojjatoleslami. See Shoaie v. Blinken, Civ. A. No. 24-1513 (GMH), 2024 WL 4697732, at *13–14 (D.D.C. Nov. 6, 2024).

---

[10] Arab, 600 F. Supp. 3d at 71 (collecting cases concluding spousal separation tips the third and fifth factors in plaintiffs' favor); accord Shoaie v. Blinken, Civ. A. No. 24-1513 (GMH), 2024 WL 4697732, at *13 (D.D.C. Nov. 6, 2024) (collecting cases concluding the same as to family separation); Meyou, 2022 WL 1556344, at *5. But see Dastagir, 557 F. Supp. 3d at 168 (concluding these factors at most "slightly" weighed in favor of a plaintiff who had been separated from her spouse because other applicants were similarly situated (emphasis added)); Hamdan v. Oudkirk, Civ. A. No. 24-1001 (BAH), 2024 WL 4553983, at *10 (D.D.C. Oct. 23, 2024) (similar).

### D. TRAC Factor Six

The sixth factor is neutral here. That factor reminds courts that a plaintiff need not allege "any impropriety lurking behind agency lassitude" as part of an unreasonable-delay claim. See TRAC, 750 F.2d at 80. Hojjatoleslami doesn't allege any impropriety, so this factor doesn't affect the Court's analysis. See, e.g., de Belinay, 2025 WL 671120, at *7.

\*         \*         \*

After considering the TRAC factors, the Court concludes that Hojjatoleslami's complaint fails to state a plausible claim for unreasonable delay. "The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion to dismiss." Meyou, 2022 WL 1556344, at *5. While Hojjatoleslami's frustration about the sluggish processing of her visa application is understandable, she has not plausibly stated a claim of an unreasonable delay at this time. For these reasons, the Court will grant the defendants' motion to dismiss the complaint. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 30, 2025